First case to be argued is 0756631, Fuson v. Tilton. Each side will have 10 minutes. Good morning. Good morning, Your Honor. Stephen Shore on behalf of the appellant Robert Michael Fuson. May it please the Court. This case arises as an appeal from the denial of a petition for writ of habeas corpus following the affirmance of a conviction by a State Court of Appeal. As such, this Court has to ask whether or not the State Court of Appeal made an unreasonable determination of the facts or reached a decision that was contrary to or unreasonably applied established federal law. The Court conducts a de novo review and need not defer to the State Court's findings. The critical question in this case is whether or not there was a custodial interrogation, and the standard there, the Supreme Court has told us repeatedly in numerous cases, looks at the totality of the circumstances, the entire picture, and asks whether or not an ordinary reasonable person would have felt free to leave or would have felt that he was essentially under arrest. Do I understand correctly he drove there on his own power and was told that he was not under arrest? Well, that is, he did drive there under his own power, but that is the first determination that the Court unreasonably made, because in Yarborough, the other island. That's an undisputed fact. He was lured to the station by a police phone call. The police initiated the contact by calling him and falsely telling him that his daughter was in trouble at school. Right, I understand they gave him that. And he panicked and he said, well, if my daughter's in trouble, I better go. Well, the fact the information was false doesn't make it coercion, does it? No, it doesn't make it, but coercion is not the issue here. It's not a matter of voluntariness. It's simply a matter of whether or not a reasonable person would feel they were in custody, and this set the stage for how he would have felt once he got to the station. So at least when he goes in, he's going on a purpose, he's quite prepared to go in to see about his daughter's problems. Well, let me say this. In Yarborough v. Alvarado, the Supreme Court stated the factor in this manner, that in that case where they found that it was a voluntary transportation, the police did not transport him to the station or require the defendant to appear at a particular time. But here, because the police initiated the contact, he was required to appear at a particular time of accusing of the police due to their chicanery. They initiated the contact and lured him to the station. They also sent cars to tail him and make sure he wouldn't flee, you know, that he would definitely show up for the interview. He wasn't aware of that. He wasn't aware he was there. Well, I think a reasonable person would have been aware of it because a reasonable person would see cars in his rearview mirror that seemed to be following you the whole way from your house to the police station. What's the evidence that the cars would seem to be following him the whole way and that he, some reasonable person, would see that? That is a... That's an inference from... It's an inference from... It's an inference, Your Honor, yes. And the second part of my question was he was told he was not under arrest. And that is, I believe, the second unreasonable finding that that was really a significant factor in this instance. Only if they tell him you're free to go, he can get up and go, can't he? Well, those were, in the context of the interview, those were plainly self-serving statements. The Supreme Court in Seabird v. Missouri disapproved of a police tactic known as question first, where the police will question a suspect, get a confession, then Mirandize him, and then go through the same interview. Yeah, that's got nothing to do with this. Well, but I think in policy terms it does because it's a very similar situation because the police tactic was very similar. I feel like you're really directing... Let's not talk over each other, okay? I don't feel like you're really directly answering my question, which was they told him he was free to leave, and it looks to me like he stayed there and continued to talk and could have left if he'd wanted to. And I'm looking for you to show me where that's wrong. They did tell him he was free to leave, yes, Your Honor. I believe those statements were self-serving and they were done to inoculate themselves from any possible challenge of this nature in order to avoid having to read his Miranda rights. So what's wrong with that? They told him he was a suspect. They told him that he was, although he was free to leave, it was undercut immediately by the contrary assertion that he would probably end up getting charged. That was made after he said twice, I'm not going to say anything without an attorney. Now if they had read him his Miranda rights at the outset of the interview and he had said I'm not going to say anything without an attorney, it would have been clear he was invoking his rights and they would have been obliged to terminate the interview right at that moment under the law. They did not do that. The termination of questioning by the claim of the suspect for an attorney can only be invoked after the suspect has been put in custody, correct? That is true. However, one of the factors here is that just because they tell you you're free to leave doesn't mean that they're telling you the truth and doesn't mean that a reasonable person will believe them. If I'm told, I mean the first thing I'm told, first I'm lured there under a pretext. Then I'm told that my daughters, two of my daughters have made serious sexual molestation allegations against me. This isn't a burglary or robbery case where, you know, there could be 50 or 100 suspects out there who might have committed the crime. I'm the guy. It's either me or nobody. It either happened or it didn't. So both because of the nature of the offense and the fact that there was no issue of identity here, I think a reasonable person, as he's told, will probably end up getting charged. And this is your one chance to tell us your side of the story. And all of this comes after he twice says I'm not going to say anything without an attorney. So what were the police really doing? And what would a reasonable person see that they were doing? You know, would you really believe I can just get up and walk out of here? No, I'm going to be arrested. And, of course, at the end of the interview, a 90-minute interview with a barrage of accusatory questions, he was arrested. Now, the State Court of Appeal, two of the justices, it was a very strong dissent in this case, Your Honor, said, well, they were polite and courteous. And they were courteous at times, but they also asked numerous pointed accusatory questions at him. Contrast this case again with Yarborough, where the interrogation focused on other suspects, not the juvenile, who was brought there by his parents, and another case where the dissenting justice also felt that he really wasn't voluntarily brought there since he didn't come of his own free will, his parents brought him. But in any event, they focused on other suspects, and he went home at the end of the interview. Now, so we're told that when you're arrested at the end of an interview, that's objective evidence tending to support the reasonableness of the belief in custody from the inception of the interview. Do you want to reserve any time for rebuttal? I do want to reserve time for rebuttal. So unless the Court has other questions, there were other areas I wanted to address, but I believe I'm running out of time, so I will. Thanks, Mr. Shorey. May it please the Court. Lynn McGinnis, Deputy Attorney General for the appellee. At first, we would just point out that what we're dealing here, as appellants started with but didn't continue with, is whether the decision of the majority of the Court of Appeal was objectively unreasonable. And what I hear from appellants' counsel is, well, he started off with that standard. He's arguing for de novo review by this Court as to whether this Court would find that his client was in custody, and that's not the standard here, as this Court knows. The appellate court, if you look at the majority opinion, the majority opinion asked for supplemental briefing on a number of different cases, many of which were United States Supreme Court cases, asked four-pointed questions of the parties to address those questions to make sure it had its decision right, and did a very thorough analysis of this case to come to its conclusion, and really very carefully applied United States Supreme Court precedent to the facts of this case, not only California cases, which had applied United States Supreme Court precedent, but also that precedent directly, and came to its own very reasonable conclusion under the facts of this case and under the law that appellant was not in custody in this case. Now, again, that Yarborough is the case, and the Yarborough Court said that whether they would disagree or not is not the standard. It's whether the appellate court was objectively unreasonable, and we can't overcome that hurdle here. Now, I do want to – I could stop there, but I just want to point out a couple of things just for the record. This idea – I'm very troubled by this argument that if you're arrested at the end, you're in custody, because that's just a silly argument to carry that to its logical conclusion. If that is a factor, that if you're arrested at the end, you're in custody, then if you talk to somebody on the field, you know, in a restaurant, and at the end they say, oh, by the way, I've murdered somebody, and you take them into custody, then they've been in custody all along. And conversely, if they're arrested, they're in an interview room in handcuffs with a gun to their head, and you let them go at the end, then they're not in custody. So obviously the standard is not what happened at the end. Ms. McGinnis, at some point in the interview, the defendant was informed that he probably would be arrested. Was that before he'd made any incriminating statements, or was it after he'd made some incriminating statements? It was after, Your Honor, and I do want to clarify the record. He said, you'll probably, I think what was said is, you'll possibly be charged with a child. He said, you'll probably end up being charged. But then the officer qualified that and said, that's a possibility. I don't know what's going to happen. We want to talk to your girl some more. We want to investigate what happened. And then there was some more dialogue after that, which again said, but you're free to leave. You can leave at any time, and that was said about five or six times to the appellant. He was told several times he was not under arrest. As far as these police cars, there was a factual finding made by the trial court and testimony that was undisputed that the cars were hidden, that this appellant did not know that police cars were following him outside as he went to the station. So objectively, no reasonable person would know those cars were following him. The last thing I want to point out, and obviously we don't need to go here in this case, but just to have some closure to this, is that appellant testified at trial, and he lied. He said he did not touch the girls. So if you need to even go to the breadth standard of harmlessness, this interview would have come in for impeachment because appellant got on the stand and lied. So for all those reasons, the appellee would ask this court to uphold the judgment of the district court and of the court of appeal that there was no custody here. In other words, you say that there was an independent, admissible basis for the interview, even if it was not for purposes of incriminating him, but simply to show that he spoke out of both sides of his mouth. Yes, Your Honor, because under Harris v. New York, it would have been admissible for impeachment because it was not. It was put into evidence, was it not? It was put into evidence, and then appellant testified and lied. Was there any objection to him coming into evidence and being only admissible on impeachment grounds? Well, it was admitted for its truth because the Miranda objection was overruled. But when you go to Brecht, if you find that it was improperly admitted, if the state court of appeal was unreasonable, then you need to go to Brecht, obviously. And then the next step is it would have been admissible for impeachment because appellant took the stand and lied, and there was no claim that it was involuntary. So it would have come in anyway for impeachment. So that's the people's position on this case. So unless the court has any further questions, we would submit. I don't think so, Mr. Nunez. Thank you very much. I'm sure you have a couple minutes left. Thank you, Your Honor. First, I want to apologize to the court for becoming a bit too passionate before speaking over you. I'll try not to do that again. What we were saying here is that the court's applications of the facts to the law was unreasonable. They unreasonably applied established federal law. Yarborough and other cases set broad criteria, but numerous cases state that it's not simply a matter of tallying the ledger, that one very serious factor can outweigh all the others if it's particularly influential, and we feel the ones we focused on here are particularly influential in this circumstance. Whether or not he was arrested at the end, I mean, it's the case of U.S. v. Griffin cited in the briefs, which says that that is objective evidence tending to support reasonableness of a belief in custody from the inception of the interview. Don't you have to prove to us that it would be an irrational deduction for the trial court, Judge Huff, to find that the defendant thought he was in custody? I mean, it would have to be – couldn't reasonable minds disagree as to whether he was in custody or not? I don't think it would be an irrational deduction. I think – I mean, is there a difference between reasonable and irrational? Most legal issues, reasonable minds can disagree, but other cases have said that – To show us that no reasonable judge would find but that this man thought he was in custody? Well, I'm not sure that's necessarily the standard, because I believe it was Williams v. Taylor, one of those cases which says that it could still be the case that if a state – if a federal court or a state court gets it wrong and is simply wrong on the law or wrong on how it applies the law to the facts, that that has not been completely discarded by the standard. Otherwise, I just wanted to say that I could be wrong about this, but my recollection of the record is that those statements that he made about not saying anything were very close to the outset of the interview, and he had not said anything incriminating at that time. The cars that followed him were unmarked, but I think a reasonable person could still tell if you were being followed. That's all that's in the record about it, I believe, is that they were unmarked. Okay, thank you very much, Mr. Short. Thank you. Thank you. Mr. McGinnis, thank you, too. Case argued is submitted.
judges: Noonan, Silverman, Bea